UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **KENNETH MODIQUE** <br> **LA DOC # 338032** | * | **CIVIL ACTION NO. 18-0787** |
| **VERSUS** | * | **JUDGE TERRY A. DOUGHTY** |
| **DARREL VANNOY, WARDEN** | * | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Pro se Petitioner Kenneth Modique, an inmate in the custody of Louisiana's Department of Corrections, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on June 12, 2018. [doc. # 1]. Modique attacks his 2015 convictions for distribution of methamphetamine and possession of methamphetamine, as well as the sentences imposed by Louisiana's 37th Judicial District Court, Caldwell Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court.

### Background

The underlying facts in this case have been set forth by the Louisiana Second Circuit Court of Appeal as follows:

> On August 11, 2014, the defendant was charged with distribution of methamphetamine, in violation of La. R.S. 40:967(A)(1). The bill of information was amended March 12, 2015, to include an additional charge of possession of methamphetamine with intent to distribute, in violation of La. R.S. 40:967(A)(1). The defendant pled not guilty, and a trial was held on May 25, 2015, on the two counts.
>
> As to count one, Detective Kevin Wyles ("Wyles"), of the Caldwell Sheriff's Department, testified that he was working in the narcotics department on May 29, 2014, when Christina Boulton ("Boulton") approached him about assisting in

efforts to get the street-level drug dealers off the streets. Boulton acted as an informant to make a controlled drug buy from the defendant.

Boulton, who admitted to a criminal history and to having used drugs other than methamphetamine or cocaine, testified that she had previously met the defendant, whom she also knew as "Q." Boulton called the defendant on May 29, 2014, and said she was looking for about $100.00 worth of methamphetamine. They arranged to meet in Columbia Gardens, where the sale occurred. After the sale, Boulton met with Wyles to give him the drugs.

Regarding count two, Sedric Meredith ("Meredith"), an investigator with the Caldwell Parish Sheriff's Department, testified that he was participating in a "round up" of various drug cases on July 3, 2014, when he received information that the defendant and Antonio Harris ("Harris") were at a trailer on Duckett Street. Meredith proceeded to the location with other officers to execute warrants for their arrest. In making the arrest, the officers found $2,400.00 in cash and a small baggie of drugs.

Todd Bridges ("Bridges"), with the Louisiana Department of Probation and Parole, testified that he was with the "round up" team that executed the arrest warrants. He testified that the money was found in a bedroom that Harris had been in but that the defendant said the room was his. He found a roll of money totaling $2,400 on the top shelf of the bedroom closet and a small cellophane bag containing methamphetamine inside it on a wooden shelf. The lab report confirmed the substance in the bag to be methamphetamine.

After the state rested, the defendant chose to remain silent and declined to testify. By vote of 11–1, the jury found the defendant guilty as charged of count one, distribution of methamphetamine, and guilty on count two of the responsive verdict of possession of methamphetamine. The trial court ordered a PSI report. The state filed a habitual offender bill.

At sentencing on May 26, 2015, and having reviewed the PSI report, the trial court noted that the defendant had four prior felony convictions for accessory to murder, armed robbery, burglary, and introduction of contraband into a penal facility. The court observed that the defendant, age 40, was a career criminal who had spent the majority of his adult life in jail and had his parole revoked three times. The court found that the defendant's drug sales created a risk to society and that he had not shown any positive response to prior attempts at rehabilitation in a correctional setting.

After stating that any lesser sentences would deprecate the seriousness of the offenses, the court imposed a sentence of 30 years at hard labor on count one, distribution of methamphetamine, along with a $2,000 fine, plus fees. In default

>of payment, the trial court ordered the defendant to serve 90 days in jail. On count two, possession of methamphetamine, the court imposed a concurrent sentence of five years at hard labor, along with a $1,000.00 fine plus fees, with 45 days in the parish jail in default of payment. The court ordered the defendant to reimburse the IDB $2,000. The defendant was given credit for time served and advised regarding post-conviction relief.
>
>After sentencing, the state withdrew the habitual offender bill. Claiming that the imposed sentences were excessive, the defense objected to the sentences and filed a motion to reconsider. The trial court denied the motion.

*State v. Modique*, 50,413 (La. App. 2 Cir. 1/27/16), 186 So. 3d 283, 285–86.

Modique filed a direct appeal in the Second Circuit Court of Appeal, arguing that his sentence was excessive. On January 27, 2016, the Second Circuit amended the sentences imposed to vacate the imposition of jail time in lieu of payment of fines and fees and affirmed Modique's sentences and convictions in all other respects. *Id.* at 289. On March 13, 2017, the Louisiana Supreme Court denied Modique's subsequent application for writ of certiorari and/or review. *State v. Modique*, 2016-0464 (La. 3/13/17), 216 So. 3d 801. Modique did not file a petition for certiorari in the United States Supreme Court.

On January 22, 2016, Modique filed an application for post-conviction relief in the state district court arguing that the evidence against him was insufficient to support a conviction.[1] [doc. # 10-6 at 439–43]. The district court denied his application on January 25, 2016. (*Id.* at 444). The Second Circuit Court of Appeal denied his application on April 14, 2016. (*Id.* at 445). Modique sought a supervisory and/or remedial writ, which the Louisiana Supreme Court denied on September 6, 2017. *State ex rel. Modique v. State*, 2016-0854 (La. 9/6/17), 225 So. 3d 1053.

---

[1] Petitioner styled the motion as one for a new trial, but the Louisiana Supreme Court later construed the filing as an application for post-conviction relief. *State ex rel. Modique v. State*, 2016-0854 (La. 9/6/17), 225 So. 3d 1053.

3

In its per curiam opinion, the Louisiana Supreme Court found that Modique had fully litigated his application for post-conviction relief in state court and exhausted his right to state collateral review. *Id.*

On June 12, 2018, Modique filed the instant federal habeas corpus petition, arguing (1) excessive sentence; and (2) insufficient evidence to support a conviction. [doc. # 1-2]. The State filed its response on September 6, 2018. [doc. # 10]. This matter is ripe.

## Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs habeas corpus relief of a state prisoner. The AEDPA limits how a federal court may consider habeas claims. After a state court has adjudicated a prisoner's claims on the merits, federal review "is limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). An application for a writ of habeas corpus should be granted if the petitioner shows that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). The 'contrary to' requirement "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions

4

as of the time of the relevant state-court decision." *Id.* at 412. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 413.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). AEDPA has put into place a deferential standard of review, and a federal court must defer to a state court adjudication on the merits. *Valdez v. Cockrell*, 274 F.3d 941, 950 (5th Cir. 2001). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

## **Discussion**

### I. **Excessive Sentence**

Modique argues that his concurrent sentences of five years at hard labor for possession of methamphetamine and thirty years at hard labor for distribution of methamphetamine are excessive. [doc. # 1-2 at 6]. Modique claims that at sentencing, the trial court focused only on his prior criminal history and did not mention his family ties, marital status, employment status, or other mitigating factors under La. Code Crim. Proc. art. 894.1. (*Id.* at 7). Modique states that he will be approximately seventy years old upon release, and the chances that he will be able to gain

employment and maintain family support after being in prison will be "virtually impossible." (*Id.* at 8). Modique also notes that his co-defendant received a sentence of only ten years. (*Id.*)

The State responds that the trial court was not required to take into consideration every circumstance listed in article 894.1. [doc. # 10 at 10]. Further, to the extent that Modique is challenging the Louisiana courts' interpretation of article 894.1, federal courts lack authority to review such a claim. (*Id.*) Finally, the State claims that the trial court's sentence is not constitutionally excessive given Modique's extensive criminal history. (*Id.* at 11–12).

To the extent that Modique is arguing his sentences are excessive under Louisiana law, such a claim is not cognizable in this federal proceeding. *Pierre v. Radar*, No. CIV.A. 11-55, 2012 WL 3026790, at *6 (E.D. La. June 18, 2012) (collecting cases). Federal habeas corpus relief is available only to remedy violations of the Unites States Constitution and federal law. *Id.* at *7. To the extent that Modique is claiming his sentences are excessive under the federal Constitution, specifically under the Eighth Amendment's prohibition of cruel and unusual punishment, his claim lacks merit.

The Eighth Amendment prohibits "extreme sentences that are grossly disproportionate to the crime." *Graham v. Fla.*, 560 U.S. 48, 60 (2010) (citations and quotations omitted). To determine whether a sentence is grossly disproportionate, the court first compares "the gravity of the offense and the severity of the sentence"; if this threshold comparison "leads to an inference of gross disproportionality, the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Id.* If this comparative analysis validates the initial finding of gross disproportionality, then "the sentence is cruel and unusual." *Id.*

According to the transcript of Monique's sentencing, the trial court (1) noted that Modique was a fourth felony offender; (2) noted that Modique's record indicates he is a career criminal, he has been in jail for a large part of the previous twenty-three years, and his parole has been revoked on three separate occasions; and (3) stated it considered Modique a risk to society who has shown no positive response to rehabilitation in a correctional setting and therefore is "in need of a custodial environment." [doc. # 10-5 at 384]. The trial court also stated that it considered the pre-sentence investigation report and then sentenced Modique to the statutory maximum for each crime, opining that "a lesser sentence would deprecate the seriousness of [his] crimes." (*Id.* at 384–85).

Defense counsel filed a motion to reconsider the sentence imposed, and the trial court held a hearing. In denying the motion, the court stated that it reconsidered whether the sentences should run consecutively instead of concurrently given that Modique was a career criminal and a risk to society, and not whether the sentences should be reduced. (*Id.* at 390–91).

Modique raised this claim on direct appeal. The appellate court rejected Modique's claim that his sentences were excessive, reasoning that

> the defendant benefitted from a substantial reduction in potential exposure to confinement. The PSI report shows that the defendant was on parole when he committed the subject offenses. His parole was revoked on July 15, 2014. In addition to these two new felony convictions, the defendant had been convicted of armed robbery, simple burglary, and introducing contraband into a penal facility. Based on these convictions, he faced a habitual offender bill as a fourth felony habitual offender and a harsher sentence. In fact, the sentences imposed would have been the minimum sentences available under the habitual offender bill.
>
> Additionally, the PSI report also shows a 1994 conviction for accessory to second degree murder, some misdemeanor convictions, and that he violated his parole twice before, in 2007 and in 2012.

> The trial court noted that the defendant was 40 years old and that he had been in jail for a large part of his life. Based on the defendant's career of crime and propensity to violate his parole, the court concluded that the likelihood of rehabilitation was poor. Considering the defendant's history of violent crime and drug trafficking, the court found him to be a danger to society and concluded that any lesser sentence would deprecate the seriousness of his offenses.
>
> Although the trial court did not elaborate on the details of the defendant's personal background, education, and work history, there was a factual basis for the sentences in the record as well as the court's consideration of the defendant's criminal history and parole violations. We observe that since the defendant has spent a majority of adulthood in jail, there would be little in the way of personal, educational, or work history to consider in mitigation.
>
> The terms of imprisonment and the fines imposed are within the statutory guidelines. Under the facts of this case, we find that the sentences are neither disproportionate to the offenses nor a needless infliction of pain and suffering. The sentences are not constitutionally excessive.

*Modique*, 186 So. 3d at 288.

Upon review of the sentencing and hearing transcripts and the Second Circuit's opinion, the undersigned finds that Modique's sentences are not grossly disproportionate to the offenses. Though at the high end, the terms of imprisonment are within the statutory guidelines for the crimes committed. Further, Modique's extensive criminal history demonstrates that he has a lack of respect for the law and it is unlikely he can be rehabilitated. Therefore, the state court's rejection of Modique's excessive sentence claim was not contrary to, or an unreasonable application of, clearly established federal law.

Accordingly, this claim should be **DISMISSED**.

## II. Insufficient Evidence[2]

---

[2] The State suggests Petitioner may be procedurally barred from raising his claim of insufficient evidence on federal habeas corpus review because he did not raise it in the state court. [doc. # 10 at 13–14]. However, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies

8

Modique argues that video evidence introduced at his trial contradicts the testimony of Detective Kevin Wyles of the Caldwell Parish Sheriff's Office. Specifically, he claims that Detective Wyles testified that a confidential informant purchased drugs from Modique on May 29, 2014 at around 3:01 PM, but a video of the incident is time stamped and dated May 6, 2014 at approximately 11:17 AM. [doc. # 1-2 at 9]. Modique also suggests that the recording may have been edited and claims there is "no concrete evidence, there is no marked money, no video footage that Petitioner Modique gave drugs to Christina Boulton." (*Id.* at 10–12).

The State responds that

> [t]he evidence presented in these cases was sufficient to sustain Petitioner's conviction of both crimes. With respect to the video tape, the record shows that it was properly authenticated at trial. The testimonies of Wyles and Boulton clearly show that the video that was played for the jury was the same tape used to record the drug transaction. Wyles had detailed, in his police report which was disclosed in discovery, the discrepancy concerning the times mentioned by Petitioner. Detective Wyles identified the DVD at trial. The jury obviously found the officers and Boulton credible.

[doc. # 10 at 16] (citations omitted).

A state court's determination that there is sufficient evidence to support a conviction will not be overturned unless it was contrary to or involves an unreasonable application of the clearly established federal law as set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *Williams v. Puckett*, 283 F.3d 272, 277–78 (5th Cir. 2002). The clearly established law with regards to the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements [of the crime] beyond a reasonable doubt." *Id.* (quoting *Jackson*, 443 U.S. at 319). The *Jackson* inquiry "does

---

available in the courts of the State. 28 U.S.C. § 2254(b)(2). Therefore, this court may review and deny on the merits Petitioner's claim without addressing whether there is a procedural bar.

9

not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993). Thus, a court "may find the evidence sufficient to support a conviction even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

The undersigned has reviewed the trial transcript and video recording of the drug transaction and finds that the testimony and evidence presented at trial supports Modique's conviction.

Detective Wyles testified he set up the video to record Boulton as she purchased drugs from Modique on May 29, 2014. Although he did not personally observe Modique give Boulton the drugs, he testified that the video captured the drug deal. Further, after the drug deal, he put the drugs into an evidence bag, sealed it, and locked it in his safe until he took it to the crime lab. Detective Wyles also addressed the May 6th time stamp on the recording and stated that the transaction occurred on May 29th and he had noted the discrepancy in his report of the incident. [docs. # 10-3–10-4 at 293–319].

Boulton testified that she acted as a confidential informant for the Caldwell Parish Sheriff's Office, and on May 29, 2014, purchased one-hundred dollars' worth of methamphetamine from Modique. After the purchase, she brought the narcotics to Detective Wyles. During her testimony, Boulton also admitted she had a criminal history involving various misdemeanor offenses. [doc. # 10-4 at 320–33].

Sedric Meredith, an investigator with the Caldwell Parish Sheriff's Office, testified that he was present when Modique was arrested and officers found $2,400.00 in cash and a small bag

of narcotics in his bedroom. The lab report confirmed the substance to be methamphetamine. (*Id.* at 340–47). Todd Bridges, a Louisiana Probation and Parole Officer, testified that he executed the arrest warrant for Modique and found the money and drugs in Modique's bedroom. (*Id.* at 348–53).

The lab reports introduced at trial confirmed that the substances sold to Boulton and found in Modique's bedroom contained methamphetamine, a schedule II controlled dangerous substance. [doc. # 10-5 at 449–50, 452–53].

Based on Boulton's testimony that Modique sold her narcotics on May 29, 2014 and Meredith and Bridges' testimonies that they found narcotics in Modique's bedroom, a reasonable jury could have found that Modique committed the crimes of distribution of methamphetamine and possession of methamphetamine with intent to distribute.[3] Although the video recording of the transaction between Modique and Bolton contains the wrong date and time, [*see* doc. # 15], it was reasonable for the jury to accept Detective Wyles' testimony that the transaction occurred on May 29th and he noted the date/time discrepancy in his initial report. Thus, under the *Jackson* standard, the evidence presented at trial was sufficient to support Modique's conviction.

Accordingly, this claim should be **DISMISSED**.

## Conclusion

Based on the foregoing, **IT IS RECOMMENDED** that the petition for habeas corpus filed by Petitioner Kenneth Modique [doc. # 1] be **DENIED**.

---

[3] The trial court instructed the jury as to the law applicable for each offense charged. [doc. # 10-5 at 374–76].

11

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Report and Recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before the Judge makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

In Chambers, Monroe, Louisiana, this 17th day of January 2019.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE